**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JORDAN OLIVERAS,**

    *Plaintiff,*

    *v.*

**CLARITY SERVICES, INC.,**

    *Defendant.*

_____/

Case No.: 8:26-cv-1715

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Jordan Oliveras ("Mr. Oliveras"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, Clarity Services, Inc. ("Clarity" or "Defendant"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages exceeding $50,000, exclusive of attorneys' fees and costs, brought by Mr. Oliveras against the Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

## JURISDICTION AND VENUE

2. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which provides that an action to enforce any liability created under the FCRA may be brought in any appropriate United States district court without regard to the amount in controversy.

3. This Court has personal jurisdiction over the Defendant pursuant to §

48.193, Fla. Stat. and Fed. R. Civ. P. 4(k), because the Defendant regularly conducts business in the State of Florida and within this District, and because the acts giving rise to this action occurred within this District.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Mr. Oliveras' claims occurred in this District, where Mr. Oliveras resides.

## PARTIES

### Mr. Oliveras

5.      Mr. Oliveras is a natural person residing in Lakeland, Polk County, Florida.

6.      Mr. Oliveras is a Consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7.      Clarity is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8.      Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9.      Clarity is a Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on

consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Clarity's Inaccurate Consumer Reports Regarding Mr. Oliveras

10.    Around May 13, 2021, Clarity began maintaining a credit file on Mr. Oliveras.

11.    Clarity, a CRA that predominantly serves the needs of online lenders making short-term loans, programs its systems to acquire and report as much information as possible, with little regard to the quality or accuracy of the data.

12.    On May 5, 2026, Mr. Oliveras requested and obtained a copy of his consumer disclosure from Clarity ("Clarity's Disclosure").

13.    The FCRA requires a consumer reporting agency, upon a consumer's request, to "clearly and accurately disclose to the consumer … [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

14.    Clarity's Disclosure thus provided Mr. Oliveras with a snapshot of the content of his Clarity file at the time of his request.

### Clarity Violated the FCRA by Redacting Driver's License Number

15.    Clarity's consumer disclosure to Mr. Oliveras contained a Florida driver's license disclosed as "XXXXXXXXX1850."

16.    Of the entry's 13 characters, Clarity masked nine – leaving only four characters visible to Mr. Oliveras.

17.    The FCRA, 15 U.S.C. § 1681g(a)(1)(A), permits a CRA to truncate a consumer's Social Security number in the disclosure on the consumer's request and separately governs the truncation of credit and debit card numbers on electronically printed receipts, 15 U.S.C. § 1681c(g).

18.    Nothing in the FCRA authorizes a consumer reporting agency to redact a driver's license number in a consumer's file disclosure.

19.    Because Clarity has masked the majority of the characters in the entry, Mr. Oliveras cannot determine from the disclosure whether the license number Clarity is reporting reflects his actual Florida driver's license, a transposition or data-entry error, a stale or superseded license number, or a license number belonging to a different consumer altogether.

20.    The redaction does not aid the accuracy of the disclosure – it forecloses his ability to verify the underlying data at all. Clarity's decision to disclose the entry only in redacted form is itself the violation: Clarity did not "clearly and accurately disclose" the contents of his file as 15 U.S.C. § 1681g(a)(1) requires.

### Clarity Incorporated Inaccurate Housing Information into Mr. Oliveras' File

21.    Clarity's Disclosure also contained numerous errors relating to Mr. Oliveras' residential history.

22.    For example, Clarity's Disclosure included an address disclosed as "5403 QUARRY ROCK RD LAKELAND FL 33809 LAKELAND FL 33809."

23. The city and state - "LAKELAND FL 33809" - appear repeated at the end of an address that already contains them, creating a nonsensical double-city format.

24. By failing to utilize any of the numerous existing address validation tools to scrub these obvious errors, Clarity incorporated data into Mr. Oliveras' credit file which was inaccurate and prejudicial to Mr. Oliveras' creditworthiness.

25. Clarity's credit scoring system specifically looks at the number of changes to a consumer's residential history; the more frequently a consumer has new address information reported – even if the address is the same but with a small variation – the worse a consumer will score.

26. Thus, by reporting the same address in multiple malformed formats, Clarity artificially inflates the apparent frequency of residential changes, further harming the consumer's risk score.

27. Clarity's Disclosure also indicated that, during various overlapping timeframes, Mr. Oliveras' housing status was "OTHER," "OWN" and "RENT," all within the same credit file.

28. For example, Clarity reported Mr. Oliveras' housing status as "OTHER" from September 30, 2024 through October 1, 2025; "OWN" from September 28, 2024 through December 2, 2024; and "RENT" from September 28, 2024 through October 1, 2025.

29. The multiple and contradictory housing statuses Clarity reported for Mr. Oliveras cannot all be simultaneously accurate.

30. Beyond this, the designation "OTHER" is a catch-all category not defined anywhere in Clarity's consumer disclosure, providing no meaningful information to a lender.

31. More importantly, it is false – Mr. Oliveras was not living in an "OTHER" housing situation at any point relevant to Clarity's reporting.

32. Many subprime lenders – the type Clarity services almost exclusively – use housing status to gauge risk, and treat an "OTHER" housing status as less stable than "OWN" or "RENT." That treatment leads to less favorable lending terms, or outright denials of credit, for Mr. Oliveras.

33. Most strikingly, on September 28, 2024, Clarity incorporated data reporting that Mr. Oliveras' housing status was both "OWN" and "RENT" – mutually exclusive designations that cannot simultaneously be true for the same consumer on the same day.

34. Clarity's Disclosure also included data relating to Mr. Oliveras' length of residential history.

35. As with the housing status, the data incorporated into Mr. Oliveras' Clarity file often contradicts itself.

36. On September 28, 2024 at 6:54:27 PM, Clarity incorporated data reporting Mr. Oliveras resided at his address for 25 Months.

37. Just four minutes later at 6:58:04 PM, Clarity incorporated data reporting Mr. Oliveras had resided at his address for zero Months.

38.    Thus, Clarity's report indicates Mr. Oliveras lost two years of residential history in just four minutes, which is impossible.

39.    The overlapping and contradictory residential timelines Clarity reported – including Clarity's repeated reports that Mr. Oliveras had resided at his current address for "0 Months" – create a facially inaccurate and frankly nonsensical residential history that violates the mandate of 15 U.S.C. § 1681e(b) and creates the negative and false impression that Mr. Oliveras has recently moved, has been unhoused, moves residences frequently, or resides at multiple residences simultaneously.

**Clarity Reported Inaccurate Employment Information on Mr. Oliveras**

40.    Clarity's Disclosure also includes employment data Clarity maintains on Mr. Oliveras.

41.    The same defect that affects Clarity's residential history reporting affects its employment-tenure reporting.

42.    On September 28, 2024 at 6:54:27 PM, Clarity reported Mr. Oliveras had been with his employer for 12 Months.

43.    Just 4 minutes later at 6:58:04 PM, Clarity reported Mr. Oliveras had been with his employer for zero Months.

44.    It is impossible for a consumer to lose one year of employment history in four minutes on a single day.

45.    The multiple timeline impossibilities Clarity incorporated into Mr. Oliveras' credit file with respect to his employment tenure – including Clarity's

repeated reports that Mr. Oliveras had been with his employer for "0 Months" – are not only patently absurd given their chronological impossibilities, but they also create a misleading and unreliable record of Mr. Oliveras' employment stability and the damaging impression that Mr. Oliveras was either repeatedly unemployed or had a tendency to abruptly switch occupations.

46.     Clarity's reporting further demonstrates a basic failure to confirm that data is being placed in the correct section of his credit file.

47.     For example, Clarity's file on Mr. Oliveras indicates that "METLIFE" appears is both an Employer Name and an Occupation.

48.     An employer is a business; an occupation is a job function the consumer performs. These are categorically distinct types of information, and Clarity's own disclosure separates them into distinct sections.

49.     The appearance of the same value in both fields is the signature of an intake process that accepts whatever data furnishers transmit without confirming the data is even being placed in the correct field.

50.     A reasonable procedure to assure maximum possible accuracy would, at minimum, refuse to populate the Occupation field with values that are obviously company names.

51.     Clarity also incorporated reporting that Mr. Oliveras' occupation was "UNSPECIFIED," which is clearly not an occupation.

**Clarity's File Contains Inaccurate Income Information on Mr. Oliveras**

52.    Clarity's file on Mr. Oliveras contains 13 different income figures, ranging from $3,000 to $10,000 per month, including: $3,000, $4,016, $4,800, $5,200, $8,333, and $10,000.

53.    On December 2, 2024 alone, Clarity simultaneously reported Mr. Oliveras' Net Monthly Income as both $3,000 and $10,000.

54.    A person can only have one total income at any given moment; reporting materially different income figures for the exact same date is, on its face, so atypical and internally contradictory that the data is virtually assured to be false.

55.    No reasonable procedure designed to assure maximum possible accuracy of consumer reports could have permitted these mutually exclusive figures to be reported as if both were accurate.

56.    Similarly, on November 5, 2024, Clarity simultaneously reported three different Net Monthly Income figures for Mr. Oliveras: $4,800, $6,666 and $8,333 – another set of mutually exclusive figures Clarity reported for a single date.

57.    Income is a critical metric used by financial institutions to calculate debt-to-income ratios and evaluate creditworthiness. By reporting wildly inconsistent and internally contradictory income figures for Mr. Oliveras, Clarity's file creates a false and misleading picture of Mr. Oliveras' financial situation, significantly increasing the likelihood of credit denials, reduced credit limits, or extension of credit on much less favorable, higher-interest terms.

58.    Clarity's reporting of Mr. Oliveras' pay frequency is likewise internally inconsistent.

59.    Clarity's file lists five different pay frequencies for Mr. Oliveras – "BIWEEKLY," "MONTHLY," "SEMI-MONTHLY," "SEMIMONTHLY" and "TWICEMONTHLY" – even though a consumer is generally only paid on one schedule at any given time.

60.    These pay schedules are mutually exclusive. A person paid weekly is not also paid monthly, and a person paid biweekly (every two weeks) is not also paid semimonthly (twice per month on fixed dates).

61.    Clarity's incorporation of contradictory pay-frequency data reflects an absence of data-quality controls and a failure to implement reasonable procedures to assure maximum possible accuracy of its consumer reports.

62.    Clarity's file also indicates that Mr. Oliveras' pay frequency is "M" – which is not a recognized payroll designation.

63.    Clarity's credit file does not include a legend defining what "M" pay status means.

64.    These entries do not correspond to any actual pay schedule and could not have survived any reasonable procedure designed to assure maximum possible accuracy of consumer reports.

65.    On June 2, 2025, Clarity incorporated data into Mr. Oliveras' credit file reporting that his next paycheck would arrive on February 28, 2025 – a date that had already passed approximately three months earlier.

66. By definition, a "next paycheck" date refers to a future payday; reporting a date that, on the very day of the report, was already in the past is a logical impossibility on the face of the data.

67. Clarity knew, or in the exercise of any reasonable procedure should have known, that no employed consumer's next paycheck could be scheduled for a day that had already passed when the report was generated. Yet Clarity incorporated this facially absurd placeholder value into Mr. Oliveras' credit file and sold it to creditors anyway.

68. The presence of a stale "next paycheck" date is the hallmark of a system that accepts whatever information furnishers send without ever checking whether it makes basic sense.

**Clarity Included the Inaccurate Information in Consumer Reports Sold**

69. Clarity has sold at least 42 consumer reports on Mr. Oliveras in the past two years.

70. Each of the multiple reports sold by Clarity contained false and preposterous information about Mr. Oliveras' employment history, housing status, and income, as outlined herein.

71. The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a history of reliable employment and stable income.

72. Clarity's inclusion of demonstrably false information about Mr. Oliveras' employment, income, housing status, and identifying information had a

significant negative impact on Mr. Oliveras' ability to obtain new credit with favorable terms.

73.    The FCRA is clear in its requirement that Clarity, as a CRA, is required to prepare accurate reports:

> Accuracy of Report.  Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.  15 U.S.C. §1681e(b).

74.    Clarity was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Mr. Oliveras.

75.    Clarity was thus aware that when it sold reports on Mr. Oliveras that, under a best-case scenario, it was selling data and other information it knew it had gathered without regard to accuracy or completeness.

### Clarity Fails to Meaningfully Disclose Legally Required Information

76.    As aforementioned, on or about May 5, 2026, Mr. Oliveras requested a copy of his consumer credit disclosure from Clarity.

77.    Upon receipt of Mr. Oliveras' request, Clarity was required to disclose all information "clearly and accurately" in the credit file, including the identity of each person who obtained a consumer report within the prior year. *See* 15 U.S.C. § 1681g(a)(3)(A)(ii).

78.    The FCRA defines "Identification" as "the name of the person or, if applicable, the trade name (written in full) under which such person conducts business." *See* 15 U.S.C. § 1681g(a)(3)(B)(i).

79. Frequently, Clarity fails to fulfill its legal obligations regarding disclosure of this data, often disclosing what can be fairly called incomprehensible information which virtually no one would comprehend.

80. For example, Clarity's disclosure shows an inquiry made on October 10, 2025 which Clarity identified to Mr. Oliveras only as "CCBank/TLS/MK Analytics/Propel."

81. This single inquiry purports to identify four separate end users – "CCBank," "TLS," "MK Analytics," "Propel" – bundled together as one entry, with no indication which of these entities actually requested the report or what their relationship to one another is.

82. The FCRA requires identification of *each* person who obtained a consumer report – not a slash-delimited list of candidates from which the consumer is left to guess.

83. Clarity disclosed these entities using abbreviations or shortened names that no reasonable consumer would understand, and provided no address, phone number, or other identifying information.

84. Multiple consumers have previously sued Clarity for failing to disclose the names of entities obtaining credit reports as legally required.

85. The failure of a person to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) (holding that alleged injury to a plaintiff's statutorily created right to truthful information was a

cognizable injury in and of itself, regardless of whether the plaintiff actually intended to use the information for its primary purpose; therefore "the Art. III requirement of injury in fact [was] satisfied.").

86.     Further, the lack of accurate, full disclosure of who had obtained his credit report caused Mr. Oliveras great frustration and emotional distress and made him concerned he was the victim of fraud or identity theft.

87.     Clarity's incomplete disclosure of who accessed Mr. Oliveras' credit report and why caused Mr. Oliveras significant frustration, stress, and concern.

### Clarity Fails to Investigate Disputes

88.     Clarity, unlike its parent company Experian Information Solutions, Inc. ("Experian"), does not provide consumers any ability to dispute inaccurate information online.

89.     On May 11, 2026, after becoming aware of Clarity's reporting, Mr. Oliveras disputed the accuracy of the false information appearing on his consumer disclosure to Clarity, including the inaccurate personal information, residential information, employment information, and income information.

90.     Clarity, upon receipt of Mr. Oliveras' dispute, was required to make a reasonable investigation into his disputes and report the results of the investigation back to him within 30 days. See 15 U.S.C. § 1681i(a)(1)(A).

91.     While Clarity acknowledged receiving Mr. Oliveras' dispute, it did not initiate any investigation into Mr. Oliveras' dispute whatsoever.

92.     Thus, Clarity failed to make a reasonable investigation as required by the FCRA, § 1681i(a)(1)(A), since it failed to conduct any investigation.

93.     Under 15 U.S.C. § 1681i(a)(1)(A), the duty to reinvestigate is mandatory and attaches the moment the CRA receives the dispute. *See, e.g., Younger v. Experian Info. Sols., Inc.,* 817 F. App'x 862, 866 (11th Cir. 2020).

94.     The fact that Clarity failed to make any investigation into multiple and obvious errors is inherently unreasonable.

95.     Mr. Oliveras' experience with Clarity is far from unique.

96.     Clarity frequently fails to investigate consumer disputes, either ignoring them completely or sometimes sending a form letter to the consumer stating it could not identify what was being disputed, even when the consumer's dispute is crystal-clear.

97.     Clarity, unlike Experian, does not utilize e-OSCAR, an online platform designed to quickly, efficiently, and effectively resolve consumer disputes.

98.     Clarity must thus use much more labor-intensive methods to investigate disputes.

99.     On information and belief, Clarity frequently declines to investigate disputes as a means to avoid the time and cost of investigating consumer disputes, which it lacks any efficient way of processing.

**Clarity's Lack of Standards Constitute Willful Violations of the FCRA**

100.   Clarity operates in stark contrast to its parent company, Experian.

101.   While Experian enforces Metro 2 guidelines – industry standards which contain hundreds of pages of explanation on how to report information, covering almost any conceivable scenario, and which is used by other large CRAs and serves as a lingua franca – Clarity requires no such compliance with Metro 2 guidelines and has no discernible quality-assurance standards.

102.   In place of an industry-standard data-quality framework, Clarity's operative "standard" is to ingest and republish whatever data its furnishers transmit, without applying even rudimentary validity checks.

103.   Clarity's file on Mr. Oliveras is the direct product of that approach: it incorporates and sells information that is not merely unverified, but facially impossible – information that no reasonable data-quality procedure could have permitted to enter a consumer report.

104.   The impossibilities in Mr. Oliveras's file are not isolated transcription errors traceable to a single furnisher. They are pervasive and structural – spanning every category of data Clarity reports, including identity, residence, employment, income, and contact information – and they share a common signature: each is the kind of error that a single validity check would have caught before the data was incorporated into Mr. Oliveras's file and sold to creditors.

105.   Clarity has been the subject of repeated FCRA litigation arising from the same categories of inaccuracy described in this complaint and thus knows that its procedures are unreasonable.

106. Clarity's decision to forgo the quality controls used by its parent company and by other major consumer reporting agencies, in the face of repeated notice that this decision causes ongoing harm to consumers, constitutes a reckless disregard for the rights of the consumers whose data it sells, including those of Mr. Oliveras.

### Damages Suffered by Mr. Oliveras

107. As a direct and proximate result of Clarity's inaccurate reporting, Mr. Oliveras applied for credit and was either denied outright or offered credit on materially less favorable terms than she would have received had Clarity's file accurately reflected his true creditworthiness.

108. Mr. Oliveras has also suffered damages, including wasted time trying to figure out what the information in his Clarity file means and how it got there, lost financial opportunities, less favorable credit terms, lower credit scores, significant emotional distress and aggravation, and damage to his reputation.

109. As of the date of this filing, Clarity continues to include the aforementioned false information in Mr. Oliveras's credit file. As such, Mr. Oliveras demands that Clarity conduct an investigation upon service of this lawsuit and correct his file within 30 days.

110. Mr. Oliveras has hired the undersigned law firm to represent him in this matter and has assigned the firm his right to fees and costs.

## COUNT I
## <u>CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)</u>

111.   Mr. Oliveras adopts and incorporates paragraphs 1 - 110 as if fully stated herein.

112.   Clarity willfully violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Mr. Oliveras, as Clarity sold consumer reports containing erroneous information about his address information, date of next paycheck, employer address, housing status, months at address, months at employer, net monthly income, and pay frequency.

113.   Clarity has been sued on numerous occasions for very similar situations and knows that it frequently sells reports with erroneous information about consumers.

114.   Clarity's conduct was thus willful or done with a reckless disregard for Mr. Oliveras' rights under the FCRA.

115.   As a result of its conduct, Clarity is liable to Mr. Oliveras for the greater of Mr. Oliveras' actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Mr. Oliveras respectfully requests this Honorable Court enter judgment against Clarity for:

a.   the greater of Mr. Oliveras' actual damages and statutory damages of

$1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.      punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.      reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3);

and

d.      such other relief that this Court deems just and proper.

## COUNT II
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count I)

116.    Mr. Oliveras adopts and incorporates paragraphs 1 - 110 as if fully stated herein, and pleads this count strictly in the alternative to Count I.

117.    Clarity owed Mr. Oliveras a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Mr. Oliveras.

118.    Clarity breached this duty when it sold consumer reports containing the erroneous information concerning Mr. Oliveras' address, date of next paycheck, employer address, housing status, months at address, months at employer, net monthly income, and pay frequency, as outlined herein.

119.    Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681e(b), and Mr. Oliveras is therefore entitled to his actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Mr. Oliveras respectfully requests this Honorable Court enter judgment against Clarity for:

a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    such other relief that this Court deems just and proper.

## COUNT III
### CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)

120.   Mr. Oliveras adopts and incorporates paragraphs 1 - 110 as if fully stated herein.

121.   Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to clearly and accurately disclose all the information it had in its file by providing Mr. Oliveras with a redacted version of his Consumer Disclosure.

122.   Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

123.   Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA.

124.   As a result of its conduct, Clarity is liable to Mr. Oliveras for the greater of Mr. Oliveras' actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Mr. Oliveras respectfully requests this Honorable Court enter judgment against Clarity for:

a.    the greater of Mr. Oliveras' actual damages and statutory damages of

$1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d.    such other relief that this Court deems just and proper.

**COUNT IV**
**CLARITY'S NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681g(a)(1)**
**(Pled in the Alternative to Count III)**

125.    Mr. Oliveras adopts and incorporates paragraphs 1 - 110 as if fully stated herein, and pleads this count strictly in the alternative to Count III.

126.    Clarity owed Mr. Oliveras a legal duty to accurately disclose all the information in his credit file upon his request.

127.    Clarity breached this duty when it only provided Mr. Oliveras with a redacted version of his Consumer Disclosure.

128.    Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(1), and Mr. Oliveras is therefore entitled to his actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Mr. Oliveras respectfully requests this Honorable Court enter judgment against Clarity for:

a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    such other relief that this Court deems just and proper.

## COUNT V
## CLARITY'S WILLFUL VIOLATIONS OF 15 U.S.C. § 1681g(a)(3)(A)(ii)

129. Mr. Oliveras reincorporates paragraphs 1 - 110 as if fully stated herein.

130. Clarity violated 15 U.S.C. § 1681g(a)(3)(A)(ii) when it failed to identify each person, including the end-user, that procured Mr. Oliveras' consumer report during the one-year period preceding the date upon which he made the request.

131. Clarity is aware that its consumer disclosures fail to properly identify end-users via multiple consumer lawsuits.

132. Clarity's conduct was willful, intentional, and exhibited a reckless disregard for its duties to provide clear and accurate disclosures.

133. As a consequence, Clarity is liable to Mr. Oliveras for the greater of Mr. Oliveras' actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, and reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Mr. Oliveras respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Mr. Oliveras' actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

## COUNT VI
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)
### (Pled in the Alternative to Count V)

134.   Mr. Oliveras adopts and incorporates paragraphs 1 - 110 as if fully stated herein, and pleads this count strictly in the alternative to Count V.

135.   Clarity owed Mr. Oliveras a legal duty to disclose the identity of each user that obtained his consumer report within one year of Mr. Oliveras' request.

136.   Clarity breached this duty when it failed to identify each person, including end-users, who procured Mr. Oliveras' consumer report.

137.   Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(3)(A)(ii), and Mr. Oliveras is therefore entitled to his actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Mr. Oliveras respectfully requests this Honorable Court enter judgment against Clarity for:

a.   actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.   such other relief that this Court deems just and proper.

## COUNT VII
## WILLFUL VIOLATIONS OF THE FCRA – 15 U.S.C. § 1681i(a)(1)(A)

138.   Mr. Oliveras adopts and incorporates paragraphs 1 - 110 as if fully stated herein.

139.   Clarity violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation into Mr. Oliveras' May 2026 dispute, since it failed to conduct any investigation at all.

140.   Clarity's conduct was a result of its regular policies and procedures, which frequently result in it not conducting any investigation, and/or claiming it "can't identify" what the consumer is disputing, even when it is abundantly clear.

141.   Clarity's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations.

142.   Accordingly, pursuant to 15 U.S.C. § 1681n, Clarity is liable to Mr. Oliveras for the greater of his actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorneys' fees, and costs.

WHEREFORE, Mr. Oliveras respectfully requests this Honorable Court enter judgment against Clarity for:

a.   the greater of Mr. Oliveras' actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d.   such other relief that this Court deems just and proper.

## COUNT VIII
## NEGLIGENT VIOLATIONS OF THE FCRA – 15 U.S.C. § 1681i(a)(1)(A)
### (Pled in the Alternative to Count VII)

143.   Mr. Oliveras adopts and incorporates paragraphs 1 - 110 as if fully stated herein, and pleads this count strictly in the alternative to Count VII.

144.   Clarity had a legal duty to reasonably investigate Mr. Oliveras' May 2026 dispute.

145.   Clarity breached this duty when it failed to make any investigation whatsoever.

146.   Clarity's breach violated 15 U.S.C. § 1681i(a)(1)(A), and Mr. Oliveras is therefore entitled to his actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Mr. Oliveras respectfully requests this Honorable Court enter judgment against Clarity for:

a.     actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.     reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.     such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on June 11, 2026, by:

**SERAPH LEGAL, P. A.**

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar Number: 119168
3505 E. Frontage Road, Suite 145
Tampa, FL 33607
Tel: (813) 567-1230
BGeiger@seraphlegal.com
Service@seraphlegal.com
*Lead Counsel for Plaintiff*